FILED
01 FEB 13 PM 3:21
N.D. OF ALABAMA

ENTERED
FEB 14 2001

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
NORTHEASTERN DIVISION

DWANE WOODS, ROBERT O. LYLES, )
JAMES A. TAYLOR, SR. )
                                )
     Plaintiffs,                )
                                )
vs.                             )   Civil Action No. CV-00-S-3182-NE
                                )
MEMBERS OF THE BOARD            )
OF TRUSTEES OF THE              )
UNIVERSITY OF ALABAMA,          )
DON SIEGELMAN, Governor of      )
the State of Alabama, THE       )
ALABAMA DEPARTMENT OF           )
INDUSTRIAL RELATIONS, MARY      )
JO HOLDER, BILL PRYOR, State    )
of Alabama Attorney General,    )
NEWS MEDIA AFFILIATES WAFF,     )
WHNT, WAAY, HUNTSVILLE TIMES,   )
                                )
     Defendants.                )

### MEMORANDUM OPINION

This action was initiated by three plaintiffs: Dwane Woods, Robert O. Lyles, and James A. Taylor, Sr. Their complaint was accompanied by the following documents executed <u>solely</u> by <u>Dwane Woods</u>: an application to proceed *in forma pauperis* (doc. no. 2); an "affidavit in support of motion to proceed <u>on appeal</u> *in forma pauperis*" (doc. no. 3 (<u>emphasis</u> supplied)); and an "affidavit accompanying motion for permission <u>to appeal</u> *in forma pauperis*" (doc. no. 4 (<u>emphasis</u> supplied)). Neither Robert O. Lyles nor James A. Taylor, Sr. submitted applications to proceed *in forma pauperis*, or tendered the requisite filing fees to the clerk. This court accordingly entered an order noting the foregoing deficiency,

and providing in pertinent part that, "[s]hould either of such plaintiffs desire to proceed *in forma pauperis*, he should file with the clerk of court only one completed application in the same format as document number 2 submitted by Dwane Woods." (Order entered November 17, 2000 (doc. no. 5), at 1-2.) From that date until this, however, no further action has been taken by any plaintiff. That fact prompted this court to review the file. That examination raised concerns regarding the propriety of the claims asserted by plaintiffs, which are discussed below.

## I. DISCUSSION

### A.  Dwane Woods' Motion to Proceed Without Prepayment of Fees

A district court is accorded wide discretion in granting or denying pro se applications to proceed *in forma pauperis*. See 28 U.S.C. § 1915(a)(1);[1] *see also Rowland v. California Men's Colony*,

---

[1] *See* 28 U.S.C. § 1915(a)(1), providing in pertinent part that:

> [A]ny court of the United States may authorize the commencement, prosecution or defense of any suit, action or proceeding, civil or criminal, or appeal therein, without pre-payment of fees or security therefor, by a person who submits an affidavit that includes a statement of all assets such prisoner [sic: see following discussion] possesses that the person is unable to pay such fees or give security therefor. Such affidavit shall state the nature of the action, defense or appeal and affiant's belief that the person is entitled to redress. [Emphasis supplied.]

Despite Congress' use of the word "prisoner" in § 1915(a)(1), "it is not likely that Congress intended to preclude *in forma pauperis* applications by indigent non-prisoners, when the clear purpose of the legislation was to discourage frivolous and abusive prisoner lawsuits." Crews v. United States, 38 Fed. Cl. 10, 13 (1997). *See also* Leonard v. Lacy, 88 F.3d 181, 183 (2d Cir. 1996) (using "sic" after the word "prisoner" in § 1915(a)(1), indicating that use of the word is inappropriate); Floyd v. United States Postal Service, 105 F.3d 274, 275-76 (6th Cir. 1997) (concluding that "Congress did not intend to prevent a non-prisoner from being able to proceed *in forma pauperis* in federal court"); Rivera v. Allin, 144 F.3d 719, 722 (11th Cir. 1998) ("[f]ederal courts may continue to except non-prisoner indigents from prepaying filing fees").

506 U.S. 194, 218, 113 S.Ct. 716, 729, 121 L.Ed.2d 656 (1993). Upon consideration, the court concludes that the application of plaintiff Dwane Woods is due to be granted.

**B.   Background Facts**

Plaintiff Dwane Woods is a person who formerly was employed by the University of Alabama in Huntsville ("UAH") as a campus police officer. This is the third action he has filed in this court. The first, Civil Action No. CV-97-S-2722-NE, was filed during October of 1997 against his former employer, alleging that UAH fostered a racially hostile work environment and retaliated against him in violation of Title VII, 42 U.S.C. § 2000e *et seq.*, and 42 U.S.C. § 1981. That action was dismissed on February 17, 1998, for failure to state a claim upon which relief could be granted.

Woods filed a second suit on November 15, 1999, styled *Woods v. The Board of Trustees of the University of Alabama*, Civil Action No. CV-99-S-3037-NE. In that action, Woods again alleged that UAH had subjected him to a racially hostile work environment and retaliated against him for filing his first lawsuit and an EEOC charge, in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, 42 U.S.C. § 1981, and 42 U.S.C. § 1983. That action is still pending, but only upon Woods' retaliation claim. All other claims were dismissed by an order entered on March 10, 2000.

The present suit was filed on November 8, 2000. The complaint

3

appears to be a conglomeration of various documents, from which the plaintiffs' specific claims and allegations may be discerned only with the greatest difficulty. Even so, a careful review of the document reveals that it is, with but minor exceptions, virtually identical to the amended complaint filed in Dwane Woods' second action, CV-99-S-3037-NE. The new material in the present complaint includes the following:

1. The claims in the present complaint are not asserted by Dwane Woods alone, but also by plaintiffs Robert O. Lyles and James A. Taylor, Sr.

    a. Throughout the 33 pages of their pleading, however, there are no factual statements relating to either Lyles or Taylor, explaining why they are entitled to any relief.

    b. The single reference to these individuals is found in paragraph 3, which is a bizarre statement that lacks any cognizable connection to the claims alleged by Dwane Woods.[2]

2. In paragraphs 53 and 54, the plaintiffs contend that Woods was retaliated against by his employer for filing "multiple civil rights complaints," and that such retaliatory conduct consisted of "disciplinary actions, performance appraisal and termination of [Woods'] employment."

3. In paragraph 56 (and again on pages 16-17), the plaintiffs allege that local television stations WHNT, WAFF, and WAAY, together with The Huntsville *Times* daily newspaper, have

---

[2] The reference to Lyles and Taylor in paragraph 3 of the present complaint states:

> As a result of non-intervention and imputed negligence by the United States Government Plaintiff-Appellant associates Robert O. Lyles and James A. Taylor, Sr. suffered immeasurable harm by association to Appellant by refusing to surrender allegiance to the United States of America. Said associates dedicated personal time, financial resources and immeasurable support in assistance and preparation of Appellant legal briefs <u>unofficially</u> as understood and declared by Appellant as <u>Free Speech</u>.

Complaint (doc. no. 1), ¶ 3 (emphasis in original).

4

"repeatedly communicated information ... regard[ing] ... misconduct by Alabama Agricultural & Mechanical University, a predominately African American university and [have] failed to [report misconduct by] the University of Alabama in Huntsville, a predominately Caucasian university."

    a. The plaintiffs also assert that Dwane Woods has been denied media access in order to "communicate [with] the American people," and that this conduct amounts to racial discrimination.

4. In paragraph 57, the plaintiffs appear to assert a claim against the Alabama Department of Industrial Relations when they declare that, "[t]he failure of the Alabama Department of Industrial Relations to grant Appellant [Dwane Woods] unemployment compensation was unwarranted and without justification."

    a. They offer no further information clarifying the basis of this allegation.

5. Finally, pages 15 through 30 of the complaint are statements in the form of legal argument.

### C.  Duplicative Actions

Federal district courts are encouraged to manage their dockets in a manner that reflects "[w]ise judicial administration, giving regard to conservation of judicial resources and comprehensive disposition of litigation." *Colorado River Water Conservation District v. United States*, 424 U.S. 800, 817, 96 S.Ct. 1236, 1246, 47 L.Ed.2d 483 (1976) (quoting source omitted). Courts may dismiss an action "whenever it is duplicative of a parallel action already pending" in the same court, or another federal court. *Serlin v. Arthur Andersen & Co.*, 3 F.3d 221, 223 (7th Cir. 1993) (quoting source omitted); *see also Walton v. Eaton Corp.*, 563 F.2d 66, 70 (3d Cir. 1977) (holding that a litigant "ha[s] no right to maintain

5

two separate actions involving the same subject matter at the same time in the same court and against the same defendant").

"District courts are accorded a great deal of latitude and discretion in determining whether an action is duplicative of another, but generally, a suit is duplicative if the claims, parties, and available relief do not significantly differ between the two actions."  *Serlin*, 3 F.3d at 223 (quoting source and internal quotations omitted).

In the present case, it is clear that plaintiffs are asserting claims of employment discrimination on behalf of Dwane Woods against The Board of Trustees of the University of Alabama that are identical to those that were asserted in Woods' second action, one portion of which (Woods' retaliation claim) is still pending. Therefore, in the interest of judicial economy, the court deems it appropriate to dismiss the plaintiffs' duplicative claims.  *See, e.g., Godby v. Montgomery County Board of Education*, 996 F. Supp. 1390, 1411 (M.D. Ala. 1998) ("[D]ismissal is the appropriate remedy for a duplicative cause of action.").

## D.   **Frivolous Claims**

The statute which authorizes district courts to allow plaintiffs to proceed *in forma pauperis*, 28 U.S.C. § 1915, also provides:

> Notwithstanding any filing fee, or any portion thereof, that may have been paid, <u>the court shall dismiss the case at any time if the court determines that</u> —

6

>   (A)   the allegation of poverty is untrue; <u>or</u>
>
>   (B)   <u>The action</u> or appeal —
>
>   (i)   <u>is frivolous or malicious;</u>
>
>   (ii)   fails to state a claim on which relief may be granted; or
>
>   (iii)   seeks monetary relief against a defendant who is immune from such relief.

28 U.S.C. § 1915(e)(2) (emphasis supplied).[3]

"[D]etermining when an action is frivolous calls on the district court to exercise its discretion." *Moreland v. Wharton*, 899 F.2d 1168, 1170 (11th Cir. 1990). The Supreme Court has explained that an action "is frivolous where it lacks an arguable basis in either law or in fact. ... [The] term 'frivolous,' when applied to a complaint, embraces not only the inarguable legal conclusion, but also the fanciful factual allegation." *Neitzke v. Williams*, 490 U.S. 319, 325, 109 S.Ct. 1827, 1831-32, 104 L.Ed.2d 338 (1989). The Eleventh Circuit also has defined a lawsuit as frivolous when a "plaintiff's realistic chances of ultimate success are slight." *Moreland*, 899 F.2d at 1170. Moreover, "[e]ven if the complaint legally states a claim and the facts are not fantastic, a dismissal on grounds of frivolousness might be justified. For example, if the district court sees that an affirmative defense

---

[3] "Section 1915(e) applies to all [*in forma pauperis*] litigants — prisoners who pay fees on an installment basis, prisoners who pay nothing, <u>and nonprisoners in both categories</u>." Mitchell v. Farcass, 112 F.3d 1483, 1491 n.1 (11th Cir. 1997) (emphasis supplied).

would defeat the action ... dismissal is allowed." *Clark v. State of Georgia Pardons and Paroles Board*, 915 F.2d 636, 640 (11th Cir. 1990).

1. **Plaintiffs' allegations against the Alabama Department of Industrial Relations and various state government officials**

Plaintiffs assert that the denial of unemployment compensation benefits to Dwane Woods by the Alabama Department of Industrial Relations was "unwarranted and without justification."[4] This court finds that claim to be frivolous for several reasons. Foremost, this court lacks subject matter jurisdiction. Federal courts are courts of limited jurisdiction, empowered to hear only those cases authorized by Congress or the Constitution. "It is to be presumed that a cause lies outside this limited jurisdiction ... and the burden of establishing the contrary rests upon the party asserting jurisdiction." *Kokkonen v. Guardian Life Insurance Company of America*, 511 U.S. 375, 377, 114 S.Ct. 1673, 1675, 128 L.Ed.2d 391 (1994). The lack of subject matter jurisdiction may be raised at any time, either by the parties or this court. If subject matter jurisdiction is lacking, the court must dismiss the action. *See, e.g.*, Fed. R. Civ. P. 12(h)(3).

Plaintiffs have not alleged any facts regarding the denial of unemployment compensation to Dwane Woods that implicate a federal question cognizable under 28 U.S.C. § 1331.[5] There is no basis for

---

[4] Complaint (doc. no. 1), ¶ 57.
[5] This section provides that, "[t]he district courts shall have original

8

diversity jurisdiction under 28 U.S.C. § 1332. There is no basis for supplemental jurisdiction under 28 U.S.C. § 1367.[6] No facts have been alleged indicating that the actions of the Alabama Department of Industrial Relations are related, in any way, to other claims that arguably are within the original jurisdiction of this court.

Finally, Alabama law provides <u>exclusive</u> procedures to appeal decisions by the director of the Alabama Department of Industrial Relations denying unemployment compensation benefits. *See Alabama Code* §§ 25-4-94, 25-4-95 (1975) (2000 Replace. Vol.).

**2.   Plaintiffs' claim against the media defendants**

The exact nature of plaintiffs' claims against the local media affiliates named as defendants is difficult to discern, but it appears they are, at least in part, asserting a generalized right of access to the media for the purpose of "communicat[ing] to the American people."[7] They premise this alleged right of access upon the so-called "fairness doctrine."[8]

During the period of its existence, the "fairness doctrine"

---

jurisdiction of all civil actions arising under the Constitution, laws or treaties of the United States."

[6] 28 U.S.C. § 1367(a) provides in part:

> [T]he district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution. Such supplemental jurisdiction shall include claims that involve joinder or intervention of additional parties.

[7] Complaint (doc. no. 1), at 17.

[8] *Id.*

9

imposed duties upon broadcast licensees to provide adequate coverage of important public issues, and, to ensure that such coverage reflected the major viewpoints on the topic in dispute. *Columbia Broadcasting System, Inc. v. Democratic National Committee*, 412 U.S. 94, 111, 93 S.Ct. 2080, 2091, 36 L.Ed.2d 772 (1973). The rub lies in the fact that this doctrine was repealed as a Federal Communications Commission requirement in 1987. *In re Complaint of Syracuse Peace Council against Television Station WTVH*, 2 F.C.C.R. 5043 (1987), *aff'd*, *Syracuse Peace Council v. FCC*, 867 F.2d 654 (D.C. Cir. 1989). The FCC determined that the doctrine "was inconsistent with both the public interest and the First Amendment principles it was intended to promote." *Radio-Television News Directors Association v. Federal Communications Commission*, 184 F.3d 872, 876 (D.C. Cir. 1999). Plaintiffs' reliance on the doctrine accordingly is misplaced.

This court also notes that enforcement of the fairness doctrine was vested in the FCC, not individual plaintiffs. "Under [the FCC's] regulations and procedures, an aggrieved individual may, in a proper case, obtain relief from this administrative agency. The sole function of the Courts in enforcing the fairness doctrine is to review final orders of the FCC in accordance with the statutory scheme." *Central New York Right to Life Federation v. Radio Station W.I.B.X.*, 479 F. Supp. 8, 10 (N.D.N.Y. 1979).

Therefore, even if it were conceivable that plaintiffs could

10

state a claim based upon an asserted violation of the fairness doctrine, their complaint does not establish that they first pursued their grievances through the FCC. The Eleventh Circuit considers the failure to exhaust administrative remedies an affirmative defense. *See Dougherty County School System v. Bell*, 694 F.2d 78, 80 (11th Cir. 1982). This affirmative defense would defeat plaintiffs' claim against the broadcast media defendants and, thus, under the authority of *Clark*, 915 F.2d at 640, the claim is deemed to be frivolous and, accordingly, warrants dismissal.

### E. Standing Issues

Plaintiffs Robert O. Lyles and James A. Taylor, Sr. have no standing to bring the claims asserted in their names. "[S]tanding is a threshold jurisdictional question which must be addressed prior to and independent of the merits of a party's claims." *Dillard v. Baldwin County Commissioners*, 225 F.3d 1271, 1274 (11th Cir. 2000). Courts are "obliged to consider standing *sua sponte* even if the parties have not raised the issue." *Id.* In order to establish standing, Lyles and Taylor must first show they each:

> have suffered an "injury in fact" — an invasion of a legally protected interest which is (a) concrete and particularized, and (b) "actual or imminent, not 'conjectural' or 'hypothetical.'" Second, there must be a causal connection between the injury and the conduct complained of — the injury has to be fairly trace[able] to the challenged action of the defendant, and not ... th[e] result [of] the independent action of some third party not before the court." Third, it must be "likely," as opposed to merely "speculative," that the injury will be "redressed by a favorable decision."

*Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61, 112 S.Ct. 2130, 2136, 119 L.Ed.2d 351 (1992) (internal citations and footnote omitted). With respect to the claims of employment discrimination and denial of unemployment compensation benefits asserted on behalf of plaintiff Dwane Woods, neither Lyles nor Taylor can show they suffered any injury to a legally protected interest.

Finally, with respect to plaintiffs' claim that local television stations WHNT, WAFF, and WAAY, together with The Huntsville *Times* daily newspaper, have "repeatedly communicated information ... regard[ing] ... misconduct by Alabama Agricultural & Mechanical University, a predominately African American university and [have] failed to [report misconduct by] the University of Alabama in Huntsville, a predominately Caucasian university," this court can conceive of no set of facts that would accord any of the plaintiffs standing to assert such a claim. Even assuming that plaintiffs could show standing to assert such a claim, it is unlikely in the extreme that any alleged injury suffered by any plaintiff from the alleged disparity in coverage by the media defendants could be "redressed" by this court with a "favorable decision." *Id*. As such, this claim also is due to be dismissed.

## II. CONCLUSION

For all of the foregoing reasons, this court concludes that all claims of plaintiffs are due to be dismissed. An order

consistent with this memorandum opinion shall be entered contemporaneously herewith.

DONE this 13th day of February, 2001.

_____
United States District Judge

13